Georgiann L. GRACE, et al.

v.

**BOARD OF TRUSTEES FOR STATE COLLEGES AND UNIVERSITIES, et al.**

Civ. A; No. 84–414–A.

United States District Court, M.D. Louisiana.

Nov. 2, 1992.

J. Rodney Ryan, Shelly D. Dick, Gary, Field, Landry & Dornier, Baton Rouge, La., for plaintiffs.

Richard P. Ieyoub, Atty. Gen., State of La., Wendell G. Lindsay, Jr., Sp. Asst. Atty. Gen., Lindsay & Marcel, Baton Rouge, La., Ben R. Hanchey, Sp. Asst. Atty. Gen., Hudson, Potts & Bernstein, Monroe, La., Winston G. Decuir, Sp. Asst. Atty. Gen., Baton Rouge, La., for defendants.

## RULING ON MOTIONS

JOHN V. PARKER, Chief Judge.

This matter is before the court on motions by defendants for summary judgment, for judgment on the pleadings, and to prohibit plaintiffs from introducing certain evidence at trial. All of the motions are opposed. There is no need for oral argument.

The court has granted defendants, Dwight Vines, Frank Morgan, and David Jeffrey[1], a new trial on the claims made by

---

1. Dr. Vines was the President of Northeast Louisiana University; Dr. Jeffrey was the head of the English Department and Dr. Morgan was the Dean of the College of Liberal Arts.

plaintiffs, Georgiann Grace and James Potts, under the First Amendment to the Constitution. Essentially, plaintiffs claim that defendants were instrumental in causing Grace's contract as an instructor at Northeast Louisiana University to not be renewed and in effectively demoting Potts in connection with his employment as a tenured professor at the University. Plaintiffs claim that defendants acted in retaliation for plaintiffs having pursued legal proceedings in state court challenging the University's procedures for handling faculty grievances. See *Grace v. Board of Trustees for State Colleges and Universities*, 442 So.2d 598 (La.App. 1 Cir.1983), writ denied, 444 So.2d 1223 (La.1984).

In support of their motion for summary judgment, defendants argue that the state court action by plaintiffs did not involve a "matter of public concern" protected by the First Amendment. Defendants argue that plaintiffs acted primarily in furtherance of their own personal interests in connection with employee grievances that they were pursuing at the time rather than seeking to rectify the grievance procedures in general. Alternatively, defendants argue that, even if the lawsuit did raise a matter of public concern relating to faculty grievance procedures, plaintiffs have no evidence that defendants acted in retaliation for the public concern aspects of the lawsuit, i.e. the procedural challenges, as opposed to the pursuit of their individual grievances.

In opposition to the motion for summary judgment, plaintiffs argue that their motivation is just one factor to consider and that the court should conclude, based upon the content, form and context of their state court pleadings as a whole, that plaintiffs raised matters of public concern. In connection with the alleged retaliation by defendants, plaintiffs contend that it is sufficient to show that defendants acted because of the lawsuit generally without having to specifically tie their actions to the "public concerns aspects" of that action.

■ Whether or not a public employee's speech addresses a matter of public concern is a question of law to be resolved by the court rather than the jury. *Dodds v.*

*Childers*, 933 F.2d 271 (5th Cir.1991); *Terrell v. University of Texas System Police*, 792 F.2d 1360 (5th Cir.1986), cert. denied, 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987). Additionally, it is well established that the employee bears the burden of demonstrating that his speech addresses a matter of public concern. *Rankin v. McPherson*, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987).

■ Our analysis begins with the basic premise that federal courts are courts of limited jurisdiction and that not every wrong or injustice which occurs within a public agency amounts to a constitutional violation. In *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), the Supreme Court stated:

> We hold only that when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior. 461 U.S. at 147, 103 S.Ct. at 1690.

The Court further observed that:

> To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark—and certainly every criticism directed at a public official—would plant the seed of a constitutional case. While as a matter of good judgment, public officials should be receptive to constructive criticism offered by their employees, the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs. 461 U.S. at 149, 103 S.Ct. at 1691.

In *Terrell v. University of Texas System Police*, 792 F.2d 1360 (5th Cir.1986), the Fifth Circuit has likewise recognized that:

> Because almost anything that occurs within a public agency could be of concern to the public, we do not focus on the inherent interests or importance of the matters discussed by the employee.

Rather, our task is to decide whether the speech at issue in a particular case was made primarily in the plaintiff's role as citizen or primarily in his role as employee. In making this determination, the mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment.

792 F.2d at 1362 (footnotes omitted).

In determining whether the plaintiff is acting primarily as a citizen or as an employee, the court must consider "the content, form, and context of a given statement, as revealed by the whole record." *Connick,* supra, 461 U.S. at 147–48, 103 S.Ct. at 1690; *Ayoub v. Texas A & M University,* 927 F.2d 834 (5th Cir.1991), cert. denied, —— U.S. ——, 112 S.Ct. 72, 116 L.Ed.2d 46 (1991). In other words, "the content, form and context must be considered as a whole package, and the significance of these factors will differ depending on the circumstances of the particular situation." *Moore v. City of Kilgore, Tex.,* 877 F.2d 364 (5th Cir.1989), cert. denied, 493 U.S. 1003, 110 S.Ct. 562, 107 L.Ed.2d 557 (1989). The court examines "the content, form and context" to determine whether the plaintiff spoke as an employee or as a citizen.

Turning first to the "content" of the state court pleadings, the court finds that it pertains to certain grievances filed by plaintiffs addressing matters of personal interest such as teaching assignments, leaves of absences and merit raises. The court further finds that the subject matter of the suit touches on matters of public concern, i.e. whether faculty grievances are conducted in a fair manner in accordance with state and federal statutory and constitutional requirements.[2] The public naturally has an interest in ensuring that professors at state universities are well qualified and productive teachers. Whether or not faculty grievance procedures are conducted in accordance with law and in a fair manner may indirectly affect the quality and efficiency of the teaching staff and be of interest to the public at large. However, as noted in the *Terrell* case, supra, the fact that the topic concerns a matter of interest to the public, standing alone, is of little moment. The suit addressed matters of personal interest as well and the court must consider the "whole package" to determine the motivation of plaintiffs in challenging the procedures.

The court next examines the context in which plaintiffs filed the state court action. The state court petition, as amended, obviously was filed to obtain relief vis a vis the specific grievances filed by plaintiffs under the faculty appeals procedure.[3] However, speech may be a matter of public concern despite the "existence of an element of personal interest." *Dodds v. Childers,* 933 F.2d 271 (5th Cir.1991).

**2.** Plaintiffs sought a declaratory judgment that the University and the Faculty Appeals Committee were subject to the provisions of the Louisiana Administrative Procedure Act, La.R.S. 49:951, et seq. They further asserted that there had been no lawful delegation of authority to conduct grievance hearings from the Board of Trustees of State Colleges and Universities to the Faculty Appeals Committee and the University and that their due process rights under the state and federal constitutions had been violated.

**3.** In their state court petition as amended, plaintiffs sought to stay their employment grievances pending a judgment declaring that the provisions of the Administrative Procedure Act applied to "formal, informal procedures and adjudications in any hearing before these defendants **on issues raised herein.**" Alternatively, plaintiffs requested recognition that their property and liberty interests under the state and federal constitutions be recognized and that defendants be required "to afford procedural due process **to these petitioners** in any informal or formal grievance proceeding hereafter had". In the further alternative, plaintiffs asked that the faculty appeal procedures at the University be declared unconstitutional because the Board of Trustees for State Colleges and Universities had not authorized defendants to conduct grievances. Additionally, plaintiffs requested a declaration "that **petitioners are not required to undergo or participate in the Faculty Appeals Procedure** prior to exercising any other form of redress at law". Both **plaintiffs specifically prayed that their prior grievance procedures be invalidated** based on due process grounds. Thus, an overall reading of the state court petition, as amended, reveals that plaintiffs were primarily interested in furthering their individual grievances with the University.

Plaintiffs claim that they had mixed motives in challenging the grievance procedures. When mixed motives are involved, the court must consider the primary motivation of the plaintiffs. *Dodds,* supra. At the trial in this court, Potts testified that the lawsuit was filed because they "wanted to understand the procedure." He further explained that:

We don't know what due process means, but it seemed to us there should be a fair forum for us to be able to find out. It was our opinion that we should be given the opportunity to respond, to get documents, so it would come out with a legitimate finding and an understanding or what was involved in that procedure. We never got that.

Trial Tr. at p. 341.

In her deposition, Grace testified that she filed the lawsuit "because I was speaking out on a matter that should have concerned everyone, and that was the corruption within the university and the breakdown of the faculty procedure itself." This is plainly a "retroactive embellishment" of little value in determining the First Amendment claim. *Dodds,* supra at 274. Moreover, it is not even a fair characterization of the nature of the state court proceedings which plaintiffs initiated.

Plaintiffs have presented no evidence that their primary motivation was to aid other faculty members or draw attention to matters beyond those involving their own personal interests. Cf. *Thompson v. City of Starkville, Miss.,* 901 F.2d 456 (5th Cir. 1990) (involving allegations of widespread misbehavior within the public police force; the plaintiff had little to gain personally by his grievance and had aided others in filing similar complaints); *Gonzalez v. Benavides,* 774 F.2d 1295 (5th Cir.1985), cert. denied, 475 U.S. 1140, 106 S.Ct. 1789, 90 L.Ed.2d 335 (1986) (involving significant matters of public concern including the possibility that thousands of needy residents might have been deprived of a million dollars a year in federal assistance as the result of employment procedures challenged by plaintiff).

Finally, the court considers the form of the activity at issue in this case. There is no doubt that legal proceedings are public. However, the fact that plaintiffs availed themselves of the state court process is not in and of itself determinative. *Rathjen v. Litchfield,* 878 F.2d 836 (5th Cir.1989); *Brinkmeyer v. Thrall Independent School Dist.,* 786 F.2d 1291 (5th Cir.1986).

The fact that a public employee chooses a public forum in which to state his essentially private concerns does not convert the private grievance into a matter of public concern. See *Copsey v. Swearingen,* 790 F.Supp. 118, 123 (M.D.La.1992) (interview broadcast on television news not sufficient to convert a private grievance into a public concern); *Caine v. Hardy,* 943 F.2d 1406, 1416 (5th Cir.1991) (en banc) (". . . context alone cannot transform an inherently self-interested opinion into one that implicates public issues. Had [plaintiff] proclaimed his opposition to [defendant] . . . from the steps of the Mississippi capitol, the characterization of this speech would not differ.")

When First Amendment protection is sought in connection with prior legal proceedings, the context of the speech may be quite significant, as shown by the two cases discussed below. In *Rathjen,* supra, the plaintiff was demoted from her position as Assistant Director of Personnel with the City of Houston. She claimed that defendant Litchfield inaccurately evaluated her job performance because she opposed a "voluntary" demotion by Litchfield and she filed a lawsuit. The Fifth Circuit observed that "[t]he law is no different where the act which allegedly gave rise to the retaliation claim is the filing of a grievance or a lawsuit." *Id.* at 842. The court held that Rathjen's actions in opposing her demotion and filing the lawsuit related only to her supervisor's employment decisions and were not a matter of public concern.

In *Johnston v. Harris County Flood Control Dist.,* 869 F.2d 1565 (5th Cir.1989), cert. denied, 493 U.S. 1019, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990), the plaintiff testified in a Commissioner's Court on behalf of a co-worker in support of an Equal Employ-

ment Opportunity charge made by the co-worker against their employer, the Harris County Flood Control District. Johnston claimed that he was eventually terminated because his testimony was unfavorable and embarrassing to the employer. While the content of the testimony involved merely a personnel dispute, the Fifth Circuit found that the context, i.e. giving testimony before an official government adjudicatory body, was sufficient to elevate it to a matter of public concern. The Fifth Circuit concluded as a policy matter that allowing retaliation might chill the employee's willingness to testify, thereby impeding the court's goal of gathering facts and arriving at the truth.[4]

■ In this case, plaintiffs were not acting as disinterested witnesses. The situation at hand is more akin to that in *Rathjen.* The activity sought to be protected is the pursuit of the lawsuit as opposed to any specific testimony elicited therein. Indeed, the opinion of the state appellate court reflects that the case was decided on cross motions for summary judgment and chiefly involved matters of statutory construction.[5]

After consideration of the "content, form and context," the court concludes that plaintiffs were acting primarily as employees rather than citizens. The overall content of the state court pleadings and the context in which those proceedings took place make it quite clear that plaintiffs spoke primarily as disgruntled employees pushing their personal grievances rather than informed citizens seeking to improve the system and the University in general. The fact that plaintiffs used a public forum as a means of accomplishing their personal goals does not transform this into a matter a public concern. Similarly, the fact that their legal arguments might have coincidentally been of benefit to other faculty members or of interest to the public at large is overshadowed by the court's finding, after sitting through the trial in this matter, that their actual purpose in prosecuting the State lawsuit was undoubtedly to further their personal dispute with certain officials at the University.

Plaintiffs correctly point out that defendants have only recently focused on the public concern issues in this longstanding litigation, having ignored or glossed over the issue for years and through a succession of lawyers. That is certainly regrettable since much time and expense might have been saved had the issue been vigorously pursued at an earlier date. That fact, however, does not detract from the force of the argument now presented and, since the issue is one to be resolved by the court rather than the jury, e.g., *Dodds v. Childers,* 933 F.2d 271 (5th Cir.1991), it may be appropriately raised, even at this late date.

For these reasons, the motion by defendants for summary judgment is hereby GRANTED and this action will be dismissed.

---

**4.** See also, *Reeves v. Claiborne County Bd. of Educ.,* 828 F.2d 1096 (5th Cir.1987) (finding testimony of witness protected by First Amendment, although neutral in content, based upon policy of protecting truthful testimony).

**5.** The Louisiana First Circuit Court of Appeal found that the State Board of Trustees was vested under the state constitution with the authority to adopt rules and regulations governing internal management of universities without legislative approval or consent. 442 So.2d 598, 601. The court further held that the Administrative Procedure Act was inapplicable to faculty grievance procedures by its own terms and that plaintiffs made no cognizable due process claims.