**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

---

No. 99-40792
Summary Calendar

---

LANELL W. BRADSHAW,

Plaintiff-Appellee,

VERSUS

PITTSBURG INDEPENDENT SCHOOL DISTRICT, et al.

Defendants,

N. EDWARD KENDALL, In his official and individual capacities; DR. MARY MCKINNEY, In her official and individual capacities; DR. DAN KINCAID, In his official and individual capacities; DR. TERRY RICHARDSON, In his official and individual capacities; JONATHAN FULLER, In his official and individual capacities; DON PEEK, In his official and individual capacities; RODNEY REED, In his official and individual capacities; JOHN NICKERSON, In his official and individual capacities,

Defendants-Appellants.

---

Appeal from the United States District Court
For the Eastern District of Texas

---

April 11, 2000

Before SMITH, BARKSDALE and PARKER, Circuit Judges.

PER CURIAM:

Defendants appeal the district court's Order Adopting the Report and Recommendation of the United States Magistrate Judge, denying their motions for summary judgment. Because we find that

-1-

the speech at issue does not touch upon a public concern, we reverse and remand.

## FACTS

Plaintiff-Appellee ("Bradshaw") filed the instant suit, pursuant to 42 U.S.C. § 1983 (1994), alleging retaliation for the exercise of her First Amendment Rights and several supplemental state law claims. Bradshaw was hired as principal of Pittsburg High School for the 1995-96 school year. The next school year, Bradshaw was employed under a two-year administrator contract with Pittsburg ISD.

On February 19, 1997, the Board of Trustees met and considered the extension of the multiple year contracts of administrators. At this meeting, the Board decided to continue the plaintiff in her capacity as principal through the remainder of the 1996-97 school year and reassign her the following year in accordance with the specific provisions of her administrator contract. The next day, defendant Superintendent Kendall informed the plaintiff of the Board's decision.

On February 24, 1997 plaintiff sent the first of three memoranda to defendant Kendall,[1] suggesting that he request the Board to release Bradshaw from the remainder of her contract with pay. The reference line in the memorandum was titled "Personal and Professional Concerns, Activity Account Documentation." Also

---

[1] Copies of the memorandum were sent to the Commissioner on Education, all Board of Trustees members and the publisher of the local newspaper.

-2-

included in this memorandum were criticisms of school board members regarding certain actions they took with regard to the renewal of Bradshaw's contract, defending Bradshaw against defamatory allegations and managing the school activity fund. Bradshaw's comments regarding the activity fund came in response to accusations that she had misused resources in the fund.

Plaintiff submitted two more memoranda describing her efforts in investigating the high school activity fund records and further complaining that Board members were derelict in their duty to protect her from defamatory allegations regarding the fund. In particular, the second memorandum specifically asked the Board members to exonerate Bradshaw from issues involving the high school activity fund, while the third memorandum reiterated her request that she be released from the remainder of her contract with pay.

Following a March 17, 1997, Board of Trustees meeting, plaintiff was offered a $25,000 buy out of her contract. Plaintiff rejected the offer. On March, 19, 1997, Plaintiff was reassigned from the position of Pittsburg High School principal to the position of Alternative Education Placement Campus principal. Plaintiff filed a formal grievance with the Board seeking redress for the reassignment. The Board denied the request. On June 17, 1998, 13 days before the expiration of her contract, plaintiff resigned.

**FIRST AMENDMENT RETALIATION CLAIM**

A state may not retaliate against an employee for exercising

-3-

her First Amendment right to free speech. *See Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 444 (5th Cir. 1999) (citing *Rankin v. McPherson*, 483 U.S. 378, 383 (1987)). A public employee's right to free speech is limited when it conflicts with her role as a public employee. *See id.* There are four elements to an employee's First Amendment Claim against her employer:

> A First Amendment retaliation claim must include facts showing that: (1) the employee suffered an adverse employment decision; (2) the employee's speech involved a matter of public concern; (3) the employee's interest in commenting on matters of public concerns outweighs the defendants' interest in promoting efficiency; and (4) the employee's speech must have motivated the defendants' action.

*Lukan v. North Forest ISD*, 183 F.3d 342, 345 (5th Cir. 1999) (citing *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999)).

As a threshold requirement to constitutional protection, the public employee must establish that her speech addressed a matter of public concern. *See Connick v. Myers*, 461 U.S. 138, 146-47 (1983); *Kirkland v. Northside Indep. Sch. Dist.*, 890 F.2d 794, 797 (5th Cir. 1989). "If the speech does not concern a matter of public concern, a court will not scrutinize the reasons motivating a discharge that was allegedly in retaliation for that speech." *Dodds v. Childers*, 933 F.2d 271, 273 (5th Cir. 1991); *see also Connick*, 461 U.S. at 146 (noting that if the speech at issue "cannot be fairly characterized as constituting speech on a matter of public concern, it is unnecessary for [courts] to scrutinize the reasons for [a public employee's] discharge"); *Davis v. Ector County*, 40 F.3d 777, 782 (5th Cir. 1994) (Wisdom,

-4-

J.) ("We note that, were we to find that the subject matter of Davis's letter is not a matter of public concern, our inquiry would end.").

## Standard of Review

For purposes of appellate review, the "inquiry into the protected status of speech is one of law, not fact." *Kirkland*, 890 F.2d at 798 (quoting *Connick*, 461 U.S. at 148 n.7). "Whether the speech at issue relates to a matter of public concern is a question of law to be resolved by the court." *Tompkins v. Vickers*, 26 F.3d 603, 606 (5th Cir. 1994) (citing *Rankin v. McPherson*, 483 U.S. 378, 386 n.9 (1987)). Therefore, not only is our jurisdiction appropriate to review this issue,[2] but our review is *de novo*. *See, e.g.*, *Teague v. City of Flower Mound*, 179 F.3d 377, 380 (5th Cir. 1999); *Coughlin v. Lee*, 946 F.2d 1152, 1156 (5th Cir. 1991).

## Public Concern Analysis

Speech rises to the level of public concern when an individual speaks primarily as a citizen rather than as an employee. *See Thompson v. City of Starkville*, 901 F.2d 456, 461 (5th Cir. 1990). The analysis takes into consideration the totality of the circumstances surrounding the speech at issue.

> The existence of an element of personal interest on the part of an employee in the speech does not prevent finding that the speech as a whole raises issues of

---

[2] Because the district court's denial of summary judgment was based on the denial of qualified immunity, this is a permissible interlocutory appeal. *See Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *Jones v. City of Jackson*, --- F.3d ---, --- , No. 98-60013, 2000 WL 156093, at *2 (5th Cir. Feb. 14, 2000).

-5-

public concern.  On the other hand, an employee cannot transform a personal conflict into an issue of public concern simply by arguing that individual concerns might have been of interest to the public under different circumstances.

*Dodds*, 933 F.2d at 273 (citations omitted); *see also Connick*, 461 U.S. at 149-50 ("To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark--and certainly every criticism directed at a public official--would plant the seed of a constitutional case."); *Terrell v. University of Texas System Police*, 792 F.2d 1360, 1362 (5th Cir. 1991) ("[T]he mere fact that the topic of the employee's speech was one in which the public might or would have a great interest is of little moment . . . because almost anything that occurs within a public agency could be of concern to the public.").  "Whether an employee's speech addresses a matter of public concern, rather than a matter of personal concern, must be determined by the content, form, and context of

a given statement, as revealed by the entire record."  *Denton v. Morgan*, 136 F.3d 1038, 1043 (5th Cir. 1998)

## DISCUSSION

Unlike the district court and the magistrate court, we find the factual record sufficiently developed to make the legal finding that Bradshaw's speech does not touch a matter of public concern.

### Content

The memos seek a buy-out of Bradshaw's contract.  After

Kendall refused to buy her out, she wrote the first of the three memos.  Appellant is correct in categorizing the communications from Bradshaw as "settlement negotiations seeking paid leave for the remainder of her contract once the employment dispute began." Bradshaw is not entitled to insert a few references to an activity fund and claim that her speech was primarily that of a citizen rather than a disgruntled employee.  *See, e.g.*, *Teague*, 179 F.3d at 382 ("The mere insertion of a scintilla of speech regarding a matter of public concern would make a federal case out of a wholly private matter fueled by private, non-public matters.").

The defensive tone of the initial memorandum sets the stage for the two that follow.  In the February 24, 1997, Bradshaw defends herself against allegations that she misused student activity funds and criticizes the Board's handling of the allegations.  The second memorandum, drafted February 28, 1997, echo the sentiments of the first document.  After discussing and explaining various unreimbursed expenditures from the activity fund, Bradshaw noted that these "matters" were not "to be discussed at social gatherings, the coffee shop, or in responding to questions of P.I.S.D. patrons."  If the contents of these memoranda were really "matters of public concern," as Bradshaw asserts, then social gatherings and responses to P.I.S.D. patrons are entirely appropriate forums to discuss such matters.

In the third and final memorandum, Bradshaw specifically requests that her "name, personal and professional reputation be

publically exonerated with respect to" the allegations of her misuse of the student activity fund. This is a matter of pure personal concern. *See, e.g.*, *Teague*, 179 F.3d at 383.

Although partially about the fund, which may be a matter with some public concern, plaintiff wrote the memoranda, investigated the fund and chastised Board members in an effort to protect her name and her job. The content of the memoranda are predominately personal communications rather than communications relating to a matter public concern.

### Form

The form of the memoranda provides further support that Bradshaw drafted the documents in her capacity as a public employee rather than as a public citizen. Each of them was signed by Bradshaw as "High School Principal." At least two of the memoranda were on Pittsburg High School Letterhead. These facts heavily favor a conclusion that Bradshaw's speech did not constitute matters of public concern.

In addition, Bradshaw did not publicly announce her "personal and professional concerns" regarding the Board's handling of the allegations that she mishandled school activity funds. The "concerns" delineated in the three memoranda were made in the form of a response in a employer-employee dispute. Although the fact that Bradshaw chose to file internal grievances rather than publicize her complaints is not dispositive, such evidence weighs in favor of our finding that Bradshaw's speech was public rather than private in nature. *See Teague*, 179 F.3d

at 383; *Moore v. Mississippi Valley State Univ.*, 871 F.2d 545, 551 (5th Cir. 1989).

## Context

According to the record, the memoranda (the speech at issue in this case) were written *after* the decision was made (and conveyed to Bradshaw) to reassign Bradshaw after the 1996-97 school year ended. In this context, Bradshaw's "speech" is more akin to a personal grievance rather than a matter of public concern. Post hoc metamorphoses fall short of the constitutional threshold. *See Terrell*, 933 F.2d at 274 ("Retrospective embellishment cannot transform personal grievances into matters of public concern."). In this light, Bradshaw's complaints cannot be seen "in the context of a continuing commentary that had originated in a public forum." *Tompkins*, 26 F.3d at 607 (quoting *Brawner v. City of Richardson*, 855 F.2d 187, 192 (5th Cir. 1988)).

This conclusion is consistent with the principle noted by the Supreme Court in *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274 (1977), that employees already involved in a potentially adverse employment decision cannot engage in actions usually protected by the First Amendment in an attempt to frustrate the employment decision. Such a rule would place the employee "in a better position as a result of constitutionally protected conduct than he would have occupied had he done nothing." *Mt. Healthy*, 429 U.S. at 285.

## CONCLUSION

-9-

The content, form and context of the memoranda show that these were more of an effort by Ms. Bradshaw to clear her name rather than some contribution to a public dialogue on high school activity funds as she would have this court believe. In other words, they represent speech by Ms. Bradshaw primarily acting as an employee rather than a citizen. For the foregoing reasons, Plaintiff has failed to show that her speech touched on a matter of public concern. Therefore, the ruling of the district court denying summary judgment is reversed. The case is remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED