# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-40060

United States Court of Appeals
Fifth Circuit

**FILED**

October 13, 2017

Lyle W. Cayce
Clerk

GWYNN LUMPKIN; LESLIE KRENEK,

> Plaintiffs–Appellants,

v.

ARANSAS COUNTY, TEXAS,

> Defendant–Appellee.

---

Appeal from the United States District Court
for the Sothern District of Texas
USDC No. 2:15-CV-190

---

Before SMITH, OWEN, and HIGGINSON, Circuit Judges.

PER CURIAM:*

After their employment as paralegals in the Aransas County Attorney's office was terminated, Gwynn Lumpkin and Leslie Krenek brought this suit against Aransas County under 42 U.S.C. § 1983, asserting the terminations were in retaliation for the exercise of their First Amendment rights. The district court granted the County's motion for summary judgment. We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-40060

## I

Richard Bianchi, who was at the time the Aransas County Attorney, announced his candidacy to become the judge of the Aransas County court-at-law, a position he ultimately won. Assistant County Attorney Deborah Bauer complained to the County District Attorney that Bianchi was not complying with the Texas Constitution's "resign-to-run" provision, which, she claimed, required Bianchi to resign from his position before seeking election as a judge. Bianchi fired Bauer, who then sued the County for unlawful employment practices. In the course of that litigation, Bauer produced her text conversations with Lumpkin and Krenek, and they were deposed. Although the County asked Lumpkin and Krenek for all records of communications with Bauer, they did not produce the text messages.

The content of those messages—nearly 200 of them—can be broadly categorized as relating to: (1) Bianchi's campaign and its effects on the office, (2) opinions as to Bianchi's intelligence and competence, and (3) office and personal affairs.

In the first category, some of the texts comment on Bianchi's campaign practices and alleged failure to comply with the resign-to-run provision. For example, Lumpkin informed Bauer that Bianchi received a fax from neighbors telling him where to put a campaign sign and Lumpkin inquired, "Isn't that using county equipment for campaign purposes[?]" After a campaign meeting in which Bianchi commented on the court schedule of Bill Adams, the incumbent judge, Lumpkin complained to Bauer about the effect the comment would have on the office's hearing schedule:

> Lumpkin:   By the way. After Richard[']s comment last night.
> The judge told Gracie to start putting things on the
> Monday and Friday docket if we have a courtroom.
> I hate Richard. Such a prick

No. 17-40060

Bauer:      Great – my job just became unbearable

Lumpkin:   We feel the same way.  Richard needs to resign

Bauer:      I agree!!  When are we going to prepare and how is that making our job less burdensome??

Lumpkin:   Richard told them at the meeting that that is the way he [Judge Adams] ran his court.  Just like a doctor[']s office.  Stupid stupid man
The stupid bastard is clueless[.]

Months later, when Bauer recounted how she told Judge Adams that "he and Richard were killing [her]" with the pace of hearings, Lumpkin responded:

I feel the same way.  I don't have time to proof anything with the amount of paperwork that needs drafting. . . . Richard has no clue the amount of work we do and doesn't care.  Used to at least have someone faxing and copying etc.  Now we don't even have that.  No wonder we make mistakes.  Impossible to keep up.  Since Richard made that comment about the court schedule.  They are killing us[.]

Continuing to decry the strain on the office, Lumpkin said: "The problem is Richard has no clue.  At least the judge knows what is going on.  Richard is clueless.  I have [n]o respect for the man and I guarantee when he leaves I will tell him he is the worst boss I have ever worked for."  She later added, "I am surprised he stands up straight.  No backbone at all.  LOL."

Lumpkin and Krenek also conversed with Bauer about other aspects of Bianchi's campaign.  Krenek, for example, told Bauer, "[H]e needs to know that his negative campaigning is going to kill the office staff."  Similarly, Lumpkin complained that Bianchi had been untruthful by overestimating the number of people at a campaign meeting.  She also noted that Bianchi left the office early to give a campaign speech and, on a separate occasion, did not return to work after a meeting because he was "out politicing [sic]."  When Bauer told Lumpkin that Bianchi had reported his incumbent opponent to the judicial conduct commission, Lumpkin replied, "Told u he would."  More generally,

Lumpkin lamented the office's awkward position during the election: "The judge on one side and Richard on the other. What a terrible situation we are in."

Many of the messages commented on Bianchi's competence and intelligence. Some messages related to Bianchi's perceived incompetence for the court-at-law judgeship. When discussing a hearing, for example, Lumpkin said: "Ever[yone] is laughing at him. He has no clue how the court works." Later, Lumpkin remarked, "Tres said that Richard is Too stupid to do county court at law," and added, "Too stupid to slap a monkeys ass."

Numerous messages mocked Bianchi in other settings. When Bianchi assigned another paralegal to work on a terrorist threat case, Lumpkin called him a "[s]tupid stupid man" and "an idiot." Lumpkin also described Bianchi as a "spineless wonder," "silly bastard," "[c]lueless wonder," and "complete idiot," and said, "[t]he more I have to deal with Richard the stupider he becomes." She also recounted how she laughed at Bianchi with co-workers after his court appearances. Krenek shared similar sentiments, calling Bianchi "an idiot" and complaining that he was selfish.

In some instances, Lumpkin's criticisms of Bianchi were accompanied by expressions of intent to withhold information from him. When an emergency motion came before the court, Lumpkin told Bauer she was "[n]ot even going to tell Richard. He would be clueless anyway," and said "I hate Richard. Lazy ass. He is clueless on everything." Regarding a commitment case concerning mental competence, Lumpkin repeatedly told Bauer that Bianchi was "clueless" and suggested they "[l]et the judge see how stupid he is."

Other messages shed light on the apparently acrimonious inner-workings of the county attorney's office. Some of the texts object to Bianchi's management style. In one conversation, Lumpkin complains, "Richard has got that intern scanning documents and helping [L]ee[A]nn. What a joke." In

another text, after informing Bauer about a conservation with Bianchi regarding replacing a door in the office, Lumpkin said "[h]e needs to resign." Other messages discussed Ashley Dugger, a paralegal, and LeeAnn, another employee. In one message, Lumpkin tells Bauer, "Wait till u see what lee ann has on. She looks like she [i]s in high school." Lumpkin later texted, "Ashley and [L]ee[A]nn are just laughing but she has not even spoken to us. She is such a bitch. Wish she never ca[m]e back." When Ashley resigned, Lumpkin exulted, "Ashley gone perman[ently]. One down two to go. Ashley took us off her facebook page . . . . We are laughing. What a joke. She is evil." Similarly, Krenek told Bauer, "Ashley was very two faced and we will not miss her at all" and "she was a baby and started a lot of the trouble."

While the text messages were overwhelmingly derogatory toward Bianchi, the depositions strike a different tone. Krenek, for example, said that Bianchi was "fair," and Lumpkin stated that she "enjoyed working for Richard" and that she "ha[d] no complaints with Richard at all."

After Bianchi became a judge, the County settled the suit that Bauer had brought. Three days later, Bianchi's replacement, Kristen Barnebey Blanford, terminated Lumpkin and Krenek. The County initially stated that Blanford based her decision on all the text messages and deposition testimony. The County now contends the decision was based on the content of the texts and "inconsistencies between the text messages and deposition testimony."

Lumpkin and Krenek sued, claiming the County retaliated against them for their texts and testimony in violation of the First Amendment. The district court granted the County's motion for summary judgment, holding that Lumpkin's and Krenek's texts did not involve matters of public concern. Although the district court considered the deposition testimony to be citizen speech on a matter of public concern, the court held that the County's interest in an efficient workplace outweighed Lumpkin's and Krenek's interest in their

No. 17-40060

speech. After the court denied their motion to reconsider, Lumpkin and Krenek appealed.

## II

The First Amendment prohibits government conduct that "abridg[es] the freedom of speech."[1] Although this protection applies to everyday citizens and public employees,[2] it has long been recognized that government entities have an interest in regulating the speech of government employees speaking as such.[3] Accordingly, to prove a First Amendment retaliation claim, a plaintiff must establish that (1) she suffered an adverse employment decision; (2) she "spoke as a citizen on a matter of public concern;" (3) her interest in free speech outweighs her employer's interest in workplace efficiency; and (4) her protected speech motivated the defendant's conduct.[4]

In this case, there is no question that Lumpkin and Krenek suffered an adverse decision—their employment was terminated. We accordingly proceed to consider the second and third elements of Lumpkin's and Krenek's retaliation claims. Determining whether Lumpkin's and Krenek's text messages and deposition testimony are citizen speech on matters of public concern involves two separate determinations: (1) whether the paralegals spoke as citizens and (2) whether their speech involved matters of public concern. "We review a district court's grant of summary judgment de novo, applying the same standards as the district court."[5] "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material

---

[1] U.S. CONST. amend. I.

[2] *Graziosi v. City of Greenville Miss.*, 775 F.3d 731, 736 (5th Cir. 2015); *see also Lane v. Franks*, 134 S. Ct. 2369, 2374 (2014).

[3] *Connick v. Myers*, 461 U.S. 138, 140 (1983).

[4] *Gibson v. Kilpatrick*, 838 F.3d 476, 481 (5th Cir. 2016).

[5] *Graziosi*, 775 F.3d at 736 (quoting *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (citation omitted)).

No. 17-40060

fact and the movant is entitled to judgment as a matter of law."'[6]  We likewise "review[] a district court's conclusions concerning First Amendment issues de novo."[7]  "This de novo review includes 'the district court's *Pickering* balancing analysis,' so long as there are no disputed, material facts."[8]

## A

We conclude that both the text messages and deposition testimony were citizen speech.  In general, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes."[9]  This generally includes "communications that relate to [the employee's] own job function up the chain of command."[10]  In *Davis v. McKinney*, for example, we held that an internal auditor's complaints to management about failure to discipline employees for viewing pornography were made as an employee because she was responsible for "oversee[ing] computer-related audits."[11]  In contrast, when the speech in question does not fall within "ordinary job responsibilities," it is made as a citizen—even if the speech concerns job duties.[12]

Lumpkin's and Krenek's deposition testimony is clearly citizen speech.  The Supreme Court has held that "[s]worn testimony in judicial proceedings is a quintessential example of speech as a citizen."[13]  The text messages also qualify as citizen speech.  Although the messages often discussed workplace matters and were sent to Bauer—Lumpkin and Krenek's supervisor—the

---

[6] *Id.* (quoting FED. R. CIV. P. 56(a)).

[7] *Id.*

[8] *Id.* (quoting *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 184 (5th Cir. 2005)); *see also Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205,* 391 U.S. 563 (1968).

[9] *Lane v. Franks*, 134 S. Ct. 2369, 2378 (2014) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)).

[10] *Davis v. McKinney*, 518 F.3d 304, 313 n.3 (5th Cir. 2008).

[11] *Id.* at 315.

[12] *Lane*, 134 S. Ct. at 2378-79.

[13] *Id.* at 2379.

7

messages were not required to fulfill job duties. Unlike the internal auditor in *Davis*, whose speech was unprotected because her reports up the chain of command were central to her job description, Lumpkin and Krenek were not required to convey any of the information reported in the text messages to Bauer.

## B

The Supreme Court has explained that "[s]peech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community or when it is . . . a subject of general interest and of value and concern to the public."[14] We determine whether a public employee's speech relates to a matter of public concern by weighing "the content, form, and context of a given statement, as revealed by the whole record."[15] Weighing these factors, we conclude that while Lumpkin's and Krenek's text messages did not relate to matters of public concern, their deposition testimony did.

## 1

We first analyze the text messages, starting with content. The content of speech is more likely to relate to matters of public concern when "releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance."[16] In *Lane*, for example, the Supreme Court held that sworn testimony regarding public corruption and misuse of state funds was speech on a matter of public concern.[17] By contrast, "[i]nternal personnel disputes and management decisions are rarely a matter of public

---

[14] *Gibson v. Kilpatrick*, 838 F.3d 476, 482 (5th Cir. 2016) (quoting *Lane*, 134 S. Ct. at 2380 (citation omitted)).

[15] *Connick v. Myers*, 461 U.S. 138, 147-48 (1983).

[16] *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 187 (5th Cir. 2005) (internal quotations omitted).

[17] *Lane*, 134 S. Ct. at 2380.

concern."[18]  In "mixed" cases involving personal and public concerns, this court analyzes the speech to determine whether "personal concerns predominate."[19] For example, in *Graziosi*, we held that a police sergeant's Facebook post about the department's failure to send a representative to the funeral of an officer from another town was not public in nature because, by emphasizing the sergeant's displeasure with the chief's leadership style, the post "devolved into a rant" and was "akin to an internal grievance."[20]  The sergeant's personal employment concerns predominated, even though the post "started by addressing subjects [of public concern]."[21]

Lumpkin and Krenek argue that their texts are public in nature because they discuss the effects of Bianchi's alleged violation of the resign-to-run law, his honesty in campaigning, his competency as an attorney, and his complaint to the judicial conduct commission about the judge he was seeking to replace. The County contends that the messages merely communicate ordinary employee grievances.

We conclude that the content of the messages was predominantly private in nature.  On one hand, Lumpkin's messages about Bianchi's campaign promises and their effects on the court schedule appear to relate to public matters.  Her comments shed light on subjects that Bianchi made public issues—the proper management of and schedule for the county court.  If made public, Lumpkin's texts might help inform the public about whether Bianchi's suggestions would truly improve the efficiency of the county court-at-law.

But even assuming that Lumpkin's and Krenek's complaints about the court schedule pertained to public matters, private employee grievances were

---

[18] *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 827 (5th Cir. 2007).

[19] *Gibson*, 838 F.3d at 485.

[20] *Graziosi v. City of Greenville Miss.*, 775 F.3d 731, 738 (5th Cir. 2015).

[21] *Id.*

the predominant theme of their text messages to Bauer. The messages are filled with language critical of Bianchi and demeaning toward other co-workers. While some of Lumpkin's and Krenek's messages discussed campaign matters, their concerns centered on the effects of Bianchi's candidacy on their own work hours and office morale. Moreover, although one of the messages comments on Bianchi's competence for elected office, the many other messages insulting him and others in the office did not. Both Lumpkin and Krenek demeaned Bianchi for his everyday work and made comments about co-workers in the office. These personal criticisms were routinely repeated in discussions that were entirely unrelated to Bianchi's candidacy. Just as the police sergeant's Facebook post was "akin to an internal grievance" in *Graziosi* even though it discussed some matters of public concern,[22] Lumpkin's and Krenek's messages to Bauer are most accurately described as complaints between co-workers. The few comments that do relate to the campaign are best understood as part of a broader pattern of derogatory comments about Bianchi.

Other messages relating to Bianchi's campaign were so trivial that they cannot be considered matters of public interest. The receipt of a single inbound campaign-related fax likely is not of interest to the general public, nor are reports that a salaried official left the office early to give a campaign speech or exaggerated the number of people in attendance at a meeting. The same is true of Lumpkin's brief acknowledgement—"Told u he would"—of Bianchi's report to the judicial conduct commission. On the whole, while some of the text messages addressed matters of public concern, private employee grievances predominated. The content of Lumpkin's and Krenek's messages weighs against the messages being a matter of public concern.

---

[22] *Id.*

The form of the messages—texts—similarly suggests that they should not be considered matters of public concern. Communications visible to the public are more likely to concern the public. In *Terrell,* a police officer's private diary entries were not matters of public concern because "[h]e made no effort to communicate the contents of the notebook to the public."[23] By contrast, a letter to a state representative was more likely a public matter because it reflected a "choice to inform someone outside" the employee's department.[24] Lumpkin and Krenek sent the text messages directly to Bauer—their supervisor—and made no effort to convey the information to anyone outside the county attorney's office. Even when the County asked Lumpkin and Krenek to produce all electronic communications with Bauer, the text messages only came to light because Bauer produced them. The form or means of communicating the messages weighs against their being considered matters of public concern.

The context of the messages also supports the conclusion that the speech did not primarily pertain to a matter of public concern. This court has previously held that when speech is "made within the context of a private employee-employer dispute" that context "militates against a finding that her speech was public in nature."[25] For example, a lawsuit brought "in the context of a continuing feud between" the local mayor and police chief rather than "against a backdrop of widespread debate in the community," was not a matter

---

[23] *Terrell v. Univ. of Tex. Sys. Police*, 792 F.2d 1360, 1362-63 (5th Cir. 1986).

[24] *Modica v. Taylor*, 465 F.3d 174, 181 (5th Cir. 2006); *see also Gibson,* 838 F.3d at 486 (lawsuit seeking to remedy personal grievance rather than to reveal information to the public was not speech on a matter of public concern); *Dodds v. Childers*, 933 F.2d 271, 274-75 (5th Cir. 1991) (college instructor who "did not address her complaints to anyone outside the College" did not speak on matter of public concern).

[25] *Graziosi*, 775 F.3d at 739.

of public concern.[26]   By contrast, speech by two teachers about improving educational standards was of public interest because it was not related to any "employment related squabble."[27]

Unlike the teachers in *Harris*, Lumpkin's and Krenek's derogatory messages are part of a broader pattern of exchanging derogatory comments about Bianchi.  The topics of the paralegals' observations regarding Bianchi range from his refusal to replace a door to his interactions with office staff and knowledge about cases.  Lumpkin's and Krenek's dislike of and disregard for Bianchi is the predominant theme of the texts at issue, and it is unsurprising that the messages at times touched on campaign matters.  While "[a]n employee's speech may contain an element of personal interest and yet still qualify as speech on a matter of public concern,"[28] Lumpkin's and Krenek's limited references to Bianchi's campaign occur within a broader context in which employment grievances and personal animosity predominate.

Weighing the content, form, and context of the text messages, we conclude that the text messages did not involve matters of public concern.  Their content, form and context, taken with the unquestionably private form of the messages, lead to the conclusion that the messages did not relate to matters of public concern.

**2**

Unlike the text messages, Lumpkin's and Krenek's deposition testimony does involve matters of public concern.  This court has held that when a witness testifies before a "fact finding body hearing an official matter" the form and context of the speech is "sufficient to elevate the speech to the level of public

---

[26] *Gibson*, 838 F.3d at 487 (quoting *Markos v. City of Atlanta*, 364 F.3d 567, 572 (5th Cir. 2004)).

[27] *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 222 (5th Cir. 1999).

[28] *Id.*

concern."[29] The Supreme Court has not "unequivocally abrogated"[30] this line of cases. Rather, the Court held in *Lane* that "the form and context of the speech [in question]—sworn testimony in a judicial proceeding—fortif[ied] th[e] conclusion" that the speech involved a matter of public concern.[31] The form and context of Lumpkin's and Krenek's testimony—given in depositions required by subpoena in a case to which they were not parties—elevate the testimony to a matter of public concern.

## C

The third element of retaliation, established in *Pickering v. Board of Education*,[32] requires us to balance the County's interest against that of Lumpkin and Krenek. The court asks "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public" due to its role as employer.[33] In doing so, we "strike a balance between 'the interests of [employees] . . . commenting upon matters of public concern and the interest of [the government], as an employer, in promoting the efficiency of the public services it performs through its employees.'"[34] In particular, we evaluate whether the speech has caused disruption, impeded performance, or "affected working relationships necessary to the department's proper functioning."[35] "When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate."[36]

---

[29] *Johnston v. Harris Cty. Flood Control Dist.*, 869 F.2d 1565, 1577-78 (5th Cir. 1989).

[30] *United States v. Tanksley*, 848 F.3d 347, 350 (5th Cir. 2017).

[31] *Lane v. Franks*, 134 S. Ct. 2369, 2380 (2014).

[32] 391 U.S. 563 (1968).

[33] *Graziosi v. City of Greenville Miss.*, 775 F.3d 731, 740 (5th Cir. 2015) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)); *see also Lane*, 134 S. Ct. at 2380-81.

[34] *Id.* at 740 (quoting *Pickering*, 391 U.S. at 568).

[35] *Brawner v. City of Richardson, Tex.*, 855 F.2d 187, 192 (5th Cir. 1988).

[36] *Connick v. Myers*, 461 U.S. 138, 151-52 (1983).

No. 17-40060

In the present case, the County's interest in an efficient, harmonious work environment in its attorney's office outweighs Lumpkin's and Krenek's interests in their speech. The County's interest as employer weighs heavily. Lumpkin's and Krenek's text messages reveal a pattern of toxic communications about supervisors and co-workers. The texts criticized fellow public servants for perceived personal and professional flaws and openly celebrated another paralegal's departure: "One down two to go."

Not only would the now-public texts about other office staff make amicable workplace relations difficult, they expose an undercurrent of duplicity that would impede the "close working relationships," which the Supreme Court has specifically held to be crucial in public attorney's offices.[37] Lumpkin's and Krenek's caustic messages about Bianchi differ markedly from the testimony in their respective depositions, which refers to Bianchi favorably. Given the contrast between the texts and testimony, the County was justified in doubting whether Lumpkin and Krenek could be trusted.

Lumpkin's and Krenek's interests in their speech are less weighty. Although "the [F]irst [A]mendment protects the right to testify truthfully at trial,"[38] it does not prevent government employers from comparing sworn testimony to other speech. Indeed, the Supreme Court has noted that sworn testimony may not be protected if it is "false or erroneous."[39]

Though it may be unclear which speech—the messages or deposition testimony—accurately depicts Lumpkin's and Krenek's sentiments about their former supervisor, the discrepancy gives the County ample support for termination. While the district court's statement that communications must

---

[37] *Id.*

[38] *Reeves v. Claiborne Cty. Bd. of Educ.,* 828 F.2d 1096, 1100 (5th Cir. 1987) (quoting *Smith v. Hightower*, 693 F.2d 359, 368 (5th Cir. 1982)).

[39] *Lane v. Franks*, 134 S. Ct. 2369, 2381 (2014).

No. 17-40060

"demonstrate an earnest interest in the public good" was incorrect, it does not impact the balance of interests in this case.

In light of the County's substantial interest in maintaining workplace trust and efficiency and responding to threats to office morale, the *Pickering* balance weighs against Lumpkin and Krenek. Accordingly, we need not address the causation element of their retaliation claim.

## III

In sum, we hold that although Lumpkin and Krenek spoke as citizens, their text messages did not, on the whole, involve matters of public concern. Although the form and context of the deposition testimony elevate it to citizen speech on a matter of public concern, the County's interest in preserving trust and efficiency in the county attorney's office outweighs any interest Lumpkin and Krenek had in their speech. For the foregoing reasons, we AFFIRM the judgment of the district court.