United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 23, 2004**

Charles R. Fulbruge III
Clerk

REVISED APRIL 8, 2004

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-40140
_____

BEN MARKOS

Plaintiff-Appellant

versus

CITY OF ATLANTA, TEXAS; MIKE DUPREE and MICHAEL AHRENS

Defendants-Appellees

_____

Appeal from the United States District Court for
the Eastern District of Texas
(USDC No. 5:02-CV-17)

_____

Before KING, Chief Judge and  DENNIS, Circuit Judge, and LYNN,[*]
District Judge.

DENNIS, Circuit Judge:

Ben Markos appeals the district court's order granting summary judgment in favor of defendants City of Atlanta, Texas, Mike Dupree, and Michael Ahrens on Markos' First Amendment retaliatory discharge claim.  The district court dismissed this claim because the court found that Markos' speech did not involve a matter of public concern.  We disagree.  Thus, we reverse and remand this

---

[*]District Judge of the Northern District of Texas, sitting by designation.

1

case to the district court for further proceedings consistent with this opinion.

BACKGROUND

Ben Markos was a police sergeant for the City of Atlanta, Texas. On February 25, 2001, Markos reported to Captain Steve Mericle, an internal affairs officer, that Officer Richard Dyer had used excessive force while arresting Ben Wiggins the previous night. Chief Mike Dupree ordered Mericle to investigate the incident. Mericle eventually concluded that Dyer had used excessive force but that Markos and the other officers present were innocent of any wrongdoing.

On October 15, 2001, Wiggins sued the City of Atlanta and several officers, including Markos and Dyer, for damages sustained during the incident. Markos informed Dupree that he was concerned about the officers' reputations and that he hoped that Dupree would defend them. Two days later, Dupree distributed a memo to all police department employees advising them "not to discuss this case with ANYONE except for attorneys hired by Texas Municipal League for our defense."

Markos admits that, prior to the memo's circulation, he had spoken to a reporter at the Atlanta Citizens Journal (the "Journal") off the record. After the memo's circulation, on October 21, 2001, the Journal published an article on the Wiggins incident stating that "Markos, when contacted by the Journal this

2

week, said that he had been ordered by the APD Chief of Police Mike Dupree 'not to talk to anyone' regarding the incident." On October 24, the Journal published another article, entitled "*Wiggins incident: Did police cover up?*", that contained several quotes from Markos. Although Markos was initially reluctant to talk, he changed his mind and granted an interview "[b]ecause my reputation dictates how well I can do my job. With what was in the paper and me not being able to defend myself since the city seems to choose not to defend any of the officers, I have no choice." In that article, Markos made statements defending some of his fellow officers[1] and criticizing Dyer's actions.[2] Markos also stated that Mericle had asked him to file two incident reports and that Dyer wanted "one with what Richie Dyer did and one without what Richie Dyer did." Markos said that he responded that he would file two reports but that they would both say the same thing. The article further quoted Markos as saying, "In 20 years I've never been asked to do two reports on anything I've ever done - especially leaving

---

[1]"I want to state for the record that Officer Green and Officer Lawrence acted as professionally as any two officers I've ever seen in over 20 years ... not only did they act professionally before the arrest, but they went above that after they had observed what Richie Dyer did. Those officers did nothing wrong."

[2] "Mr. Dyer had no business doing what he did. I don't care what Mr. Wiggins was charged with in the past. I don't care what he was charged with in the present. Once a man is in custody you don't abuse somebody. That's not what our job is. Our job is to protect and serve the public."

3

anything out of one and putting it in the other." The Journal article also reported that Markos had in fact submitted two identical reports, both detailing Dyer's actions.

After the article ran, Dupree suspended Markos with pay while investigating Markos' insubordination in agreeing to speak to the reporter for the Journal. As punishment, Markos was permanently demoted from Sergeant to Patrol Officer, placed on disciplinary probation for ninety days, and suspended without pay for five days. After the probationary period, Markos was fired; the stated reason for this firing was Markos' failure to issue traffic tickets.

Markos sued the City of Atlanta, Dupree, and Michael Aherns, the City Manager of Atlanta, in January 2002 claiming that he was retaliated against for exercising his First Amendment right to free speech. The defendants moved for summary judgment on this claim arguing that Markos' speech did not involve a matter of public concern.[3] The district court agreed with the defendants and granted summary judgment. Markos timely appealed.

**ANALYSIS**

To establish a First Amendment retaliatory discharge claim, the plaintiff must prove that (1) he suffered an adverse employment

---

[3] Markos also claimed that the defendants' actions violated his due process rights in his employment as a police officer. The district court granted summary judgment in favor of the defendants, ruling that Markos had not alleged or presented evidence of either a liberty or property interest in his employment as a police officer. Markos has not appealed that ruling.

action, (2) his speech involved a matter of public concern, (3) his interest in commenting on the matter of public concern outweighed the defendant's interest in promoting efficiency, and (4) his speech was a substantial or motivating factor behind the defendant's actions. *Harris v. Victoria Independent School District*, 168 F.3d 216, 220 (5th Cir. 1999). As the parties agree, because the district court granted summary judgment against Markos' retaliatory discharge claim on the second element, this appeal focuses only on whether Markos' speech involved a matter of public concern.

**Standard of Review**

This court reviews a district court's grant of summary judgment *de novo*. *Leasehold Expense Recovery, Inc. v. Mothers Work, Inc.*, 331 F.3d 452, 455 (5th Cir. 2003). Whether the speech at issue relates to a matter of public concern is a question of law to be resolved by the court. *Tompkins v. Vickers*, 26 F.3d 603, 606 (5th Cir. 1994). Generally, the inquiry is whether the public employee was speaking as a citizen upon matters of public concern or as an employee upon matters only of personal interest. *Harris*, 168 F.3d at 221 (citing *Connick v. Meyers*, 416 U.S. 138, 147 (1982)). The existence of an element of personal interest on the part of an employee does not prevent a finding that the speech as a whole raises issues of public concern; but an employee cannot transform a personal conflict into an issue of public concern

simply by arguing that individual concerns might have been of interest to the public under different circumstances. *Bradshaw v. Pittsburgh Independent School District*, 207 F.3d 814, 816 (5th Cir. 2000) (citations omitted).

Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. *Connick*, 416 U.S. at 147-48; *Tompkins*, 26 F.3d at 606. These factors should be considered as a package, and their significance will differ depending on the circumstances of the particular situation. *Teague v. City of Flower Mound*, 179 F.3d 377, 381 (5th Cir. 1999) (citing *Moore v. City of Kilgore*, 877 F.2d 364, 370 (5th Cir. 1989)). Markos argues that, based upon these three factors, his speech addressed a matter of public concern. The defendants counter that because Markos' motivation in speaking was to protect his reputation and the reputations of his fellow officers his speech was private in nature and thus not deserving of protection.

**Content**

We will first review the content of Markos' speech to determine whether it was public or private. An examination of Markos' speech reveals that it was "mixed" in content - both public and private. This court has often stated that allegations of police misconduct and corruption are important matters of public concern. *See, e.g., Thompson v. City of Starkville, Mississippi*,

6

901 F.2d 456, 463 (5th Cir. 1990) (Speech "complaining of misconduct within the police department ... [is] speech addressing a matter of public concern."); *Brawner v. City of Richardson*, 855 F.2d 187, 191-92 (5th Cir. 1988) (Exposure of official misconduct, especially within the police department, is generally of great consequence to the public.); *Branton v. City of Dallas*, 272 F.3d 730, 740 (5th Cir. 2001) ("There is perhaps no subset of 'matters of public concern' more important than bringing official misconduct to light." (citing *Davis v. Ector County*, 40 F.3d 777, 782 (5th Cir. 1995))). Markos' statements regarding Mericle's request for two incident reports – one with Dyer's actions and one without Dyer's actions – involved allegations of a police cover up and consequently addressed a matter of significant public concern.

But some of Markos' comments also addressed matters of personal interest. Statements made to exonerate one's own professional reputation address a matter of personal concern. *Bradshaw*, 207 F.3d at 817. Thus, Markos' statements defending his own reputation are personal in nature. This court has also held that speech on behalf of a coworker in an intra-office meeting constituted personal speech. *Fiesel v. Cherry*, 294 F.3d 664, 668 (5th Cir. 2002). Based on *Fiesel*, the defendants argue that Markos' statements protecting his coworkers also constitute personal speech. While speech on behalf of a coworker would be private in many situations, it is infused with an element of public interest

7

here because it assured the public of the trustworthiness of some of its police officers. Regardless of the characterization of Markos' statements about his coworkers, the content of Markos' speech on the whole was mixed – private and public.

**Form**

Realizing that it is not easy to break the public interest analysis down into hermetic categories of content, form, and context, *Thompson*, 901 F.2d at 462, the next step in the inquiry is to ascertain whether the form of the speech in question was public or private in nature. Publicization of the speech is a factor to be weighed in determining whether the speech was of public concern. *Thompson*, 901 F.2d at 466. The form of Markos' speech was quintessentially public as his comments appeared in the form of an article in the local newspaper. Markos made his comments to a newspaper reporter, and Markos' statements make it clear that he understood that his statements were to be used in a published article.

The situation at hand contrasts starkly with other situations in which this court has found that speech not intended for public consumption was not protected. For example, in *Terrell v. Univ. of Texas System Police*, 792 F.2d 1360 (5th Cir. 1986), Terrell's boss received an anonymous letter accompanied by photocopies of pages from Terrell's personal notepad. *Id.* at 1361. The notes were critical of the boss's job performance, and the boss eventually

8

terminated Terrell's employment. *Id.* Terrell brought a suit alleging retaliatory discharge. *Id.* This court held that "Terrell's personal notebook cannot serve as the basis for a claim that he was fired for exercising his first amendment rights. He made no effort to communicate the contents of the notebook to the public, and the evidence does not suggest that he would have had any occasion to do so." *Id.* at 1362-63. Similarly, in *Bradshaw*, the plaintiff, a school principal, sent three memoranda to the school superintendent and the members of the Board of Trustees. 207 F.3d at 815. The memoranda related to controversy and negotiations surrounding the renegotiation of Bradshaw's contract. *Id.* This court noted that Bradshaw did not publicly announce her concerns but only outlined them in internal grievances related to an employer-employee dispute. *Id.* at 817. This court stated that this fact weighed in favor of a finding that Bradshaw's speech was not public in nature. *Id.* The facts and analyses from *Terrell* and *Bradshaw* help illustrate, by contrast, the public nature of the form of Markos' speech as well as the importance of the form in ascertaining whether speech is of public concern.

**Context**

Next, we must examine the context in which Markos' speech was made so that we can evaluate whether it indicates that Markos' speech was of public concern. "[A] factor considered in determining whether speech is on a matter of public concern is

9

whether the comments were made against a backdrop of widespread debate in the community." *Harris*, 168 F.3d at 222. Public employees, by virtue of their public employment, may make valuable contributions to public debate. *Branton*, 272 F.3d at 740. Information regarding an attempted cover up by police is best obtained from a department insider, such as Markos. In fact, by the time Markos' statements had been published, there had already been a previous article published on this controversy. Thus, Markos' statements were made "in the context of a continuing commentary that had originated in [a] public forum." *Tompkins*, 303 F.3d at 607 (citing *Brawner*, 855 F.2d at 192).

Additionally, a journalist who desired this information for the purpose of publication approached Markos. Two of our sister circuits have found, and we agree, that the fact that the speaker was approached by a journalist weighs in favor of a finding that the speech involved a matter of public concern, even if the plaintiff had a personal stake in the subject being discussed. *Rode v. Dellarciprete*, 845 F.2d 1195, 1202 (3d Cir. 1988) ("Dismissing [the public employee's] speech as unprotected merely because she had a personal stake in the controversy fetters public debate on an important issue because it muzzles an affected public employee from speaking out. Thus, we hold that when a public employee participates in an interview sought by a news reporter on a matter of public concern, the employee is engaged in the exercise

of a first amendment right to freedom of speech, even though the employee may have a personal stake in the substance of the interview."); *Matulin v. Village of Lodi*, 862 F.2d 609, 613 (6th Cir. 1988) (same).  Because Markos' statements were made against a backdrop of public debate and Markos was approached by a reporter who intended to use Markos' statements in a published article, we conclude that the context of Markos' speech was also public in nature.

**Motivation**

As noted above, the defendants argue that Markos' speech was primarily intended for the private purpose of protecting his reputation and, based upon this court's opinions in *Teague* and *Bradshaw*, is thus not entitled to First Amendment protection.  The district court agreed, concluding that "Markos was speaking out to protect his own reputation, not to advise the citizens of improprieties at the department."  The district court focused much of its analysis on Markos' motivation without examining the *Connick* factors in detail.

*Bradshaw* and *Teague* do not support the proposition that motivation is the new litmus test for the matter of public concern analysis, displacing the *Connick* factors. The general facts of *Bradshaw* are outlined above.  In *Bradshaw*, this court concluded that "the content, form, and context of the memoranda show that these were more of an effort by Mrs. Bradshaw to clear her name

11

rather than some dialogue on high school activity funds as she would have this court believe." 207 F.3d at 818. While this statement does support the principle that an employee's motivation in speaking is relevant to the inquiry at hand, it is also indicative of the full analysis of the content, form, and context factors actually employed by the court in *Bradshaw*. It does not stand for the proposition that motivation has supplanted the *Connick* factors in the public interest inquiry.

*Teague* involved a lawsuit by two police officers who were eventually terminated after filing an internal grievance against the chief of police based on their suspicions that he had covered up the wrongdoing of another officer. 179 F.3d at 379. The defendants point out that this court stated that "[a]lthough interspersed with apparently genuine concerns regarding police wrongdoing, [the officer's] grievances were primarily motivated by, and primarily addressed, concerns particular to their private interests." *Id*. at 383-84.

But, as in *Bradshaw*, this court pursued a full content, form, and context analysis in *Teague*. Although the court concluded that the content at issue in *Teague* was "predominantly public," the court noted that the context of Teague's grievance was private, an employer-employee dispute, and that the grievance letter was "undeniably private in form." *Id*. at 383. Here, by contrast, the context and form of Markos' speech are unquestionably public. In

12

fact, the *Teague* court noted that this court elevated the roles of context and form over content in *Gillum v. City of Kerrville*, 3 F.3d 117, 121 (5th Cir. 1993). Thus, the *Teague* court concluded that "[t]aking these three factors together, and weighing the latter two (context and form) more heavily as required by *Gillum*, we conclude that the speech is not entitled to First Amendment protection." *Id*. at 382-83. As these excerpts illustrate, the *Teague* court, like the *Bradshaw* court, did not analyze motivation to the exclusion of applying the *Connick* test. Additionally, to the extent that *Teague* focuses on context and form more than content, its analysis is decidedly unhelpful to the defendants in this case.

The analyses in *Bradshaw* and *Teague* are consistent with the analysis this court employed in *Thompson v. City of Starkville, Mississippi*, 901 F.2d 456 (5th Cir. 1990). In finding that a police officer's internal complaints alleging improprieties in the police department would, if true, constitute speech on a matter of public concern, *id*. at 467, this court noted that the existence of an element of personal interest on the part of an employee in his or her speech does not dictate a finding that the speech is not on a matter of public concern. *Id*. at 463. As to using the employee's motivation as the sole test for whether speech addresses a matter of public concern, the *Thompson* court referenced a portion of an Eleventh Circuit decision, *Kurtz v. Vickery*, 855 F.2d 723, 727 (11th

13

Cir. 1988). *Id.* at 465 n.7. The *Kurtz* court stated that "focusing solely on … the employee's motivation does not fully reflect the Supreme Court's directive that the content, form, and context of the speech must all be considered." *Id*. at 727.

Markos' statements do indicate that his motivation for coming forward was to protect his own reputation as well as the reputations of his fellow officers. As discussed above, to the extent that Markos intended to clear his own reputation, his motivation was private. And, again, while speaking out to defend the reputation of coworkers would often be private, here Markos' motivation for doing so contains an element of public interest because he was assuring the public of the trustworthiness of a number of its police officers. Of course, these motivations only explain Markos' statements criticizing Dyer and defending himself and the other officers who were present; these motivations do not explain why Markos would have gone on to give information regarding an attempted cover up by the police department, which was the primary focus of the article. It therefore follows that Markos' motivations for speaking were mixed in the same manner as the content of his speech.

In this case, we have a public employee speaking out about alleged corruption in the police department, a subject undoubtedly of public concern. The comments were published in the local newspaper against a backdrop of brewing public controversy, and the

14

employee was approached by a reporter – not vice versa. In this case, the fact that the content of the speech and Markos' motivations were partially private is not enough to remove this speech from the realm of public concern. Again, the multi-factor analysis outlined in *Connick* is factually intensive, and in this case the balance tips in favor of a finding of public concern. Thus, the district court erred in granting summary judgment in favor of the defendants.

## CONCLUSION

We find that Markos' speech involved a matter of public concern. The district court's order granting summary judgment is REVERSED, and this case is REMANDED for proceedings consistent with this opinion.