Efren **GARCIA**, Plaintiff,

v.

Hector **MONTENEGRO**
et al., Defendants.

No. EP–07–CV–123–PRM.

United States District Court,
W.D. Texas,
El Paso Division.

April 18, 2008.

Charles Mark Berry, Attorney at Law, El Paso, TX, for Plaintiff.

Jerry R. Wallace, Steven Joseph Blanco, Blanco Ordonez & Wallace, P.C., El Paso, TX, for Defendants.

### *MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT*

PHILIP R. MARTINEZ, District Judge.

On this day, the Court considered Defendants Hector Montenegro, Paul Pearson, Elizabeth Veloz, and Jerry Molinoski's ("Defendants") "Motion for Summary Judgment Asserting Qualified Immunity," filed on May 23, 2007; Plaintiff Efren Garcia's ("Garcia") "Opposition to Defendants' Motion for Summary Judgment," filed on July 10, 2007; and Defendants' "Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment," filed on August 21, 2007, in the above-captioned cause. On July 23, 2007, the Court issued an order

staying all proceedings pending the resolution of Defendants' Motion. After due consideration, the Court is of the opinion that Defendants' Motion should be granted for the reasons set forth below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action involves claims relating to Garcia's termination as an employee of the Ysleta Independent School District ("YISD") in El Paso, Texas. Garcia was employed as an attendance clerk at Del Valle High School ("Del Valle") in YISD. Pl.'s Compl. ¶ 10. Defendant Hector Montenegro ("Montenegro") is the Superintendent of YISD. Defs.' Mot. Summ. J. App. Ex. 1, ¶ 1. Defendant Paul Pearson ("Pearson") is the Principal of Del Valle. *Id.* Defendant Elizabeth Veloz ("Veloz") is the Director of Employee Relations for YISD. *Id.* Ex. 1 ¶ 1. Defendant Jerry Molinoski ("Molinoski") is the Associate Superintendent of Human Resources for YISD. *Id.* Ex. 1, ¶ 1

During the spring of 2006, a national debate arose in the United States concerning immigration. The United States Senate was debating a bill which proposed significant changes to the federal immigration laws. The local El Paso media covered stories related to the debate.[1] On March 29, and 30, 2006, several hundred students from El Paso-area high schools, including Del Valle, staged walkouts in protest of the Senate bill. Pl.'s Resp. Exs. 2–13.

Before the start of classes at Del Valle on the morning of March 30, 2006, YISD officials alerted Pearson to the potential for a student walkout and demonstration concerning immigration, "particularly [with regard to] Mexican American issues." Defs.' Mot. Summ. J. App. ¶ 3. Consequently, Pearson asked his assistant principals to hold a staff meeting before classes started in order to instruct the Del Valle faculty and staff to avoid acting in any manner that could incite students, and to pay close attention to any actions on the part of students that may cause disruption. *Id.* It is undisputed that Garcia attended the meeting and received these instructions. *Id.* App. Pearson Aff.; Pl.'s Resp. Ex. 15.

Later that morning, Del Valle students commenced a walkout. "Students from Del Valle High School said they pulled the fire alarm and left campus about 8:40 a.m. before classes started.... The walkout [ ] prompted a tense altercation between protestors and a high-school principal and also caused police to handcuff two boys." Pl.'s Resp. App. Ex. 13 (quoting Darren Meritz, *300 Students from Del Valle, Ysleta run into resistance*, El Paso Times, March 31, 2006, at 13A).

Shortly thereafter, Garcia and three co-workers "engaged in a conversation ... concerning the immigration debate ... [which] centered on the pros and cons of the protest marches as well as the proper immigration policy of the United States." Pl.'s Compl. ¶ 12. The conversation took place in the Del Valle attendance office.[2] *Id.*

---

1. In the appendix attached to Garcia's Response, he includes newspaper articles and editorials from the El Paso Times, dated from March 1, 2006, to March 30, 2006, which address various topics relating to immigration. Pl.'s Resp. App. Exs. 2–13

2. The parties dispute whether this conversation took place in an area accessible to stu-

dents. Garcia contends the conversation occurred in "a nonpublic area of Del Valle High School." Pl.'s Compl. ¶ 12. Defendants submit that this conversation, and Garcia's later statement, took pace in "an open area located adjacent to the student hallway and which is frequented by many students and others." Defs.' Mot. Summ. J. App. ¶ 5. The Court need

Around 11:30 a.m., Garcia stood up from his desk in the attendance office and prepared to leave for lunch. As he stood, he raised his hand and said to the co-workers with whom him he had previously discussed immigration, "Viva La Raza!"[3] *Id.* Several other staff members working in the office heard Garcia's statement. Defs.' Reply App. Exs. A–C. According to the affidavits of two of Garcia's co-workers, there were at least two students working in the attendance office at the time.[4] *Id.* Exs. A, B. Eventually, Pearson learned of the statement. Defs.' Mot. Summ. J. App. Pearson Aff.

On April 17, 2006, Pearson met with Garcia to discuss the "Viva La Raza" statement, which Garcia admitted to having made. *Id.* Pearson explained to Garcia that the statement violated school policy insofar as it contravened the instructions given at the staff meeting, and undermined the school's efforts to ensure student safety. *Id.* Pearson provided Garcia with a

letter to this effect. Pl.'s Resp. App. Ex. 15.

On May 19, 2006, Pearson sent a letter to Veloz recommending Garcia be terminated in part because he stated "Viva La Raza!" after being instructed to "act in a professional manner and keep our students calm."[5] Pl.'s Resp. App. Ex. 14. Veloz reviewed Pearson's recommendation, and conferred with Molinoski and Montenegro. All three then agreed to terminate Garcia. Defs.' Mot. Summ. J. App. ¶ 9.

Veloz and Molinoski thereupon met with Garcia and informed him that he was immediately terminated. Veloz provided Garcia with a letter setting forth the following two reasons for his termination: violating Policy DCD–R[6] and Policy DH[7]. Pl.'s Resp. App. Ex. 17. Garcia alleges that Veloz and Molinoski explained to him that his termination was due to his "Viva La Raza" statement. *Id.* App. ¶ 19.

On April 12, 2007, Garcia filed a § 1983 suit against Defendants in their individual

---

not address this dispute in order to resolve the instant Motion.

3. "This cry ... is an ancient and honorable proclamation.... *Viva La Raza* ... symbolizes the upsurge of Chicanos in the United States to achieve self-determination." Uvaldo H. Palomares, *Viva La Raza!*, 50 Personnel and Guidance Journal 119 (1979). Additionally, Defendant Pearson translates this statement into English as " 'Long Live the People' [which] is known to be a rallying cry." Defs.' Mot. Summ. J. App. Pearson Aff.

4. Garcia does not directly address whether or not students were present in the attendance office when he made the "Viva la Raza" statement, but, as set forth *supra* note 2, argues that the attendance office is a "nonpublic area of Del Valle High School." Pl.'s Compl. ¶ 2.

5. The letter also set forth that Garcia was being terminated because he disrespected Pearson and Flores at a meeting held on May 1, 2006, to discuss allegations that Garcia had copied and removed confidential student rec-

ords, and acted insubordinately by continuing to copy and remove student records after being instructed to desist from such activity. Pl.'s Resp. App. Ex. 14; Defs.' Mot. Summ. J. App. Pearson Aff.; Defs.' Reply App. Ex. D ¶ 4.

6. Regarding Garcia's Policy DCD–R violation, the letter stated: "Policy DCD–R: (4) Insubordination, which is the refusal or failure to comply with an official order or directive; (5) Failure to comply with Board policies or administrative regulations; (10) The participation in, or the commission of, an act or the exercise of the right of free speech which adversely affects the efficient operation of the schools; (12) Job related activity or conduct which results in detriment to the District." Pl.'s Resp. App. Ex. 17 (quotations omitted).

7. Policy DH requires employees to "[r]ecognize and respect the rights of students, parents, other employees and members of the community." Pl.'s Resp. App. Ex 16.

capacities alleging that they violated his First Amendment rights by taking part in the decision to terminate his employment.

In the instant Motion, Defendants argue they are entitled to summary judgment on the basis of qualified immunity because: (1) none of the Defendants "took any action that violated Garcia's clearly established First Amendment right to free speech;" and (2) their "decision to terminate Garcia was reasonable and not in violation of any clearly established constitutional right." Defs.' Mot. Summ. J. ¶ 3.

## II. LEGAL STANDARD

"Summary judgment is appropriate when the record establishes 'that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007) (quoting Fed.R.Civ.P. 56(c)).

■ "Qualified immunity protects government officials performing discretionary functions from civil damages liability if their actions were objectively reasonable in light of then clearly established law." *Bazan v. Hidalgo County*, 246 F.3d 481, 488 (5th Cir.2001) (emphasis omitted).

■ Once a defendant raises a qualified immunity defense in a motion for summary judgment, the plaintiff bears the burden to rebut that defense. *Id.* at 489. To avoid summary judgment, the plaintiff must show that the defendant violated a clearly established constitutional right, and that the defendant acted objectively unreasonable "under clearly established law existing at the time of the incident." *Id.* at 490. Failure to make either showing entitles

the defendant to summary judgment. *McClendon v. City of Columbia*, 305 F.3d 314, 326–27 (5th Cir.2002) (granting summary judgment in defendant's favor where plaintiff failed to set forth a constitutional violation).

■ "To establish a § 1983 [8] claim for employment retaliation related to speech, a plaintiff-employee must show: (1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Nixon*, 511 F.3d at 497 (quotations and citations omitted).

## III. ANALYSIS

There is no dispute that Garcia's termination constitutes an adverse employment action. Accordingly, the Court must determine: (1) whether Garcia "was speaking in his role as an employee or as a citizen on a matter of public concern," *Nixon*, 511 F.3d at 497, (2) if Garcia spoke as a citizen, "whether his interest in speaking outweighed the government's interest in efficiency," *id.*, and (3) if so, whether Garcia's speech precipitated his termination.

### A. *Garcetti* Test

■ Pursuant to *Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), employee speech qualifies for First Amendment protection when an employee speaks "as a citizen on a matter of public concern." *Garcetti*, 547 U.S. at 418, 126 S.Ct. 1951. "[B]efore asking whether the subject-matter of particular speech is a

---

8. Section 1983 creates a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or District of Columbia, subjects, or causes to be subjected,

any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...." 42 U.S.C. § 1983.

topic of public concern, the court must decide whether the plaintiff was speaking 'as a citizen' or as part of her public job." *Davis v. McKinney*, 518 F.3d 304, 312 (5th Cir.2008) (quoting *Mills v. City of Evansville*, 452 F.3d 646, 647–48 (7th Cir.2006)).

### 1. Employee or Citizen

■ "An employee is not speaking as a citizen—but rather in his role as an employee—when he 'make[s] statements pursuant to [his] official duties.'" *Nixon*, 511 F.3d at 497 (quoting *Garcetti*, 547 U.S. at 421, 126 S.Ct. 1951) (alterations in original). An employee's official duties are not necessarily defined by a job description and are not limited to the subject matter of one's employment. *Garcetti*, 547 U.S. at 421–422, 126 S.Ct. 1951. "Activities undertaken in the course of performing one's job are activities pursuant to official duties," even if the employee is not required to undertake the activity. *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir.2007). Thus, speech which "focuses on ... [an employee's] daily operations" is not protected by the First Amendment. *Id.* at 694.

In *Williams*, a high school athletic director wrote a memo to the school's principal seeking information about athletic funds and alleging financial irregularities associated with their expenditure. *Id.* at 693. The Fifth Circuit held that the memo was unprotected speech because Williams wrote it "in the course of performing his job" insofar as he needed the information in order to perform his "daily operations" as athletic director by purchasing equipment and paying tournament entry fees. *Id.*

Similarly, in *Nixon*, the Fifth Circuit held that a police officer's statement to the media, which the police department did not authorize, was unprotected speech. *Nixon*, 511 F.3d at 498. Nixon made the statement while "on duty, in his police uniform and working at the scene of [an] accident." *Id.* Nixon's statement to the media "was made pursuant to his official duties and during the course of performing his job" insofar as "speaking with the media is arguably one of an officer's job responsibilities." *Id.* at 499. Moreover, "the fact that Nixon performed his job incorrectly, in an unauthorized manner, or in contravention of the wishes of his supervisors does not convert his statement ... into protected citizen speech." *Id.*

Of course, not all speech taking place at work is made pursuant to an employee's official duties. *See Garcetti*, 547 U.S. at 420, 126 S.Ct. 1951 ("Employees in some cases may receive First Amendment protection for expressions made at work."). Examples of protected speech include "mak[ing] a public statement, discuss[ing] politics with a coworker, writ[ing] a letter to newspapers or legislators, or otherwise speak[ing] as a citizen." *Davis*, 518 F.3d at 312 (alterations in original).

■ In the instant action, uncontroverted evidence indicates that Garcia made the "Viva La Raza" statement while standing at his desk at Del Valle during school hours, and in the presence of his co-workers and at least two students working in the attendance office.[9] There is no evidence before the Court setting forth the duties of a Del Valle attendance clerk, but the Court will presume that Garcia's duties did not include speaking on political issues, *Nixon*, 511 F.3d at 499, and that the subject matter of Garcia's statement did not focus on his "daily operations," *Williams*,

---

9. Whether or not the students working in the attendance office in fact heard Garcia's statement is irrelevant insofar as there is evidence that students were present in the attendance office and Defendants reasonably believed that these students heard the statement.

480 F.3d at 694. Thus, the Court finds Garcia's statement was not made pursuant to his official duties and concludes Garcia spoke as a citizen, not an employee, when he said "Viva La Raza."

### 2. Matter of Private or Public Concern

█ Only speech which relates to a matter of public concern is eligible for constitutional protection. *Nixon,* 511 F.3d at 497; *cf. Markos v. City of Atlanta,* 364 F.3d 567, 571 (5th Cir.2004) (holding statements "made to exonerate one's own professional reputation" are not eligible for First Amendment protection); *Brammer–Hoelter v. Twin Peaks Charter Acad.,* 492 F.3d 1192, 1206 (10th Cir.2007) (denying First Amendment protection for statements criticizing staffing levels, salaries, and the actions of administrations because the statements were "internal in scope and personal in nature").

"Matters of public concern are those which can be fairly considered as relating to any matter of political, social, or other concern to the community." *Alexander v. Eeds,* 392 F.3d 138, 142 (5th Cir.2004). "Speech ... may relate to public concern if it is made against the backdrop of public debate." *Kennedy v. Tangipahoa Parish Library Bd. of Control,* 224 F.3d 359, 372 (5th Cir.2000).

█ Garcia's speech occurred in the context of a national debate concerning immigration. There is no evidence that the subject matter of his statement related to the internal affairs of Del Valle or YISD. While Garcia may have expressed a personal opinion, the subject matter of that opinion was neither personal in nature nor related to his employment. Thus, the Court finds Garcia's statement related to a matter of public concern.

### B. Balancing the Interests

█ If an employee speaks as a citizen on a matter of public concern, "the possibility of a First Amendment claim arises." *Garcetti,* 547 U.S. at 418, 126 S.Ct. 1951. " '[W]hen government penalizes speech that a plaintiff utters 'as a citizen,' [the Court] must consider the balance of public and private interests.' " *Davis,* 518 F.3d at 312 (quoting *Mills,* 452 F.3d at 647–48). The Court weighs "the employee's interest, as a citizen, 'in commenting on matters of public concern' " with "the interest of the government employer 'in promoting the efficiency of the public services it performs through its employees.' " *Id.* (quoting *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)). An employer bears the burden to show its interests outweigh the interests of its employee. *Connick v. Myers,* 461 U.S. 138, 150, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

### 1. Identifying the Interests

The Court will assume *arguendo* that Garcia has a significant interest in commenting upon a matter of public concern. *See Nixon,* 511 F.3d at 499 (finding an employee's interest in commenting upon matters of public concern to be "significant"). Defendants assert substantial interests in promoting an efficient learning environment and maintaining order. *Id.* (holding that an employer has a "substantial interest in the efficient provision of [its] services ... [which includes] maintaining discipline among employees"). Given the relative strength of the parties' interests, Defendants will prevail if they can show Garcia's statement burdens their interests. *Id.*

### 2. Balancing the Interests

Defendants assert that Garcia's statement impaired their interests because it "ha[d] the clear potential to incite violence

and student protests and walkouts" and contravened their instructions urging staff to act professionally and to avoid any potentially incitant conduct. Defs.' Mot. Summ. J. ¶ 6.

In response, Garcia contends "the school district does not show and cannot show that the statement by Mr. Garcia, 'Viva La Raza,' caused any disharmony or disruption at Del Valle." Pl.'s Resp. 6.

 To determine whether Garcia's speech burdened Defendants' interests, the Court must consider whether Garcia's statement

impairs discipline by superiors or harmony among coworkers, has a detrimental impact on close working relationship for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.

*Salge v. Edna Indep. Sch. Dist.,* 411 F.3d 178, 192 (5th Cir.2005) (quoting *Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987)). Contrary to Garcia's assertion, Defendants need not show that Garcia's statement actually caused a disruption at Del Valle or lead to student incitement. *Nixon,* 511 F.3d at n. 8 ("[A] government employer need not produce evidence of actual harm or disruption to government operations.... [C]ourts have given 'substantial weight to government employer's reasonable predictions of disruptions.'") (quoting *Waters v. Churchill,* 511 U.S. 661, 673, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994)). Thus, the Court shall evaluate these factors in light of what Defendants reasonably believed could result from Garcia's statement.

a. Whether Garcia's statement impaired discipline by superiors or harmony among coworkers

 In the instant action, there is no evidence with respect to whether Garcia's statement affected relationships among Del Valle employees in general or Garcia's relationships with his coworkers in particular.[10] However, there is evidence that Garcia's statement burdened Defendants "legitimate interest in maintaining a disciplined [work] force." *See Moore v. City of Kilgore, Tex.,* 877 F.2d 364, 374 (5th Cir. 1989) (finding insubordinate speech "burden[s] the efficient operation of the ... organization"). Defendants' reasonably believed the statement violated the instructions conveyed at the staff meeting and thus thwarted their ability to maintain discipline and order at the school. *See Nixon,* 511 F.3d at 499 (finding it reasonable for an employer to predict that insubordinate statements "would harm [its] ability to maintain discipline and order"). Accordingly, the Court finds Garcia's speech to be insubordinate and thus, burdensome to Defendants' interests.

b. Whether Garcia's statement impedes the performance of his duties or interferes with the regular operation of Del Valle

 There is no evidence that Garcia's statement interfered with his duties as an attendance clerk. However, there is substantial evidence that it interfered with Defendants' ability to conduct operations at Del Valle. Garcia's statement occurred just hours after Del Valle students staged a walkout protesting immigration reforms. Under these circumstances, the Court concludes Defendants reasonably believed that Garcia's statement burdened their

---

**10.** For this reason, the Court finds it unnecessary to consider the second factor; that is, whether Garcia's statement had a detrimental impact on close working relationship for which personal loyalty and confidence are necessary.

ability to prevent any conduct which could incite students or disrupt the school day, and to promote the orderly operation of the school day. Garcia's statement is exactly the type of conduct Defendants' instructions sought to prevent. The burden of Garcia's statement is strengthened by the fact that Defendants believed that the statement was made in front of at least two students working in the attendance office only hours after the student walkout.[11] Thus, the Court concludes this factor weighs in Defendants' favor.

Considering Defendants' substantial interest in maintaining an efficient environment and protecting students, and balancing them against Garcia's significant interest in espousing his political views, the Court finds the balancing test weighs in Defendants' favor. Accordingly, the Court holds that Garcia fails to establish a cognizable § 1983 claim for a violation of his First Amendment rights.

## IV. CONCLUSION

Having failed to establish a clear violation of his constitutional rights, the Court finds Garcia has not satisfied his burden to rebut Defendants' assertion of a qualified immunity defense. Thus, Defendants are entitled to qualified immunity, and the Court shall dismiss the claims against them.

Accordingly, **IT IS ORDERED** that the **STAY** of the above-captioned cause is hereby **LIFTED**.

**IT IS FURTHER ORDERED** that Defendants Hector Montenegro, Paul Pearson, Elizabeth Veloz, and Jerry Molinoski's "Motion for Summary Judgment Asserting Qualified Immunity" (Docket No. 10) is **GRANTED**.

**IT IS FURTHER ORDERED** that all claims against Defendants are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that any and all pending motions in the above-captioned cause are **DENIED AS MOOT**.

**IT IS FINALLY ORDERED** that the **CLERK** shall **CLOSE** the above-captioned cause.

---

11. In applying the balancing test, the Court "must examine the speech as the defendant-employer reasonably believed it to be," even if the plaintiff's claims rest upon a disputed version of the facts. *Salge,* 411 F.3d at 185. Although Garcia disputes that his statement was made in an area accessible to students, he does not dispute that Defendants reasonably believed students were present in the attendance office when the statement was made.