NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3042
_____

ERIC BEYER,
                                        Appellant

v.

DUNCANNON BOROUGH;
DUANE HAMMAKER;
PATRICK BRUNNER; AND
GERALD BELL
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE
DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 09-CV-1398)
District Judge: Honorable John E. Jones III
_____

Submitted Under Third Circuit LAR 34.1(a)
February 8, 2011
_____

Before: JORDAN, GREENAWAY, JR., and STAPLETON, Circuit Judges

(Opinion Filed:  April 14, 2011)

_____

OPINION
_____

GREENAWAY, JR., Circuit Judge

Eric Beyer ("Beyer") appeals the District Court's December 15, 2009, February 5, 2010, and June 25, 2010 Orders and Memoranda dismissing his Amended Complaint and Second Amended Complaint against Duncannon Borough, Duane Hammaker ("Hammaker"), and Patrick Brunner ("Brunner") (collectively, "Appellees").[1] Beyer contends that the District Court erred in holding that he did not plead facts sufficient to overcome a motion to dismiss his First Amendment retaliation claim. We agree with Beyer that the District Court erred in dismissing his First Amendment retaliation claim. To the extent that Beyer appeals the District Court's dismissal of his First Amendment petitioning claim, we believe that the District Court did not err in dismissing this claim. For the following reasons, we will reverse in part, affirm in part, and remand to the District Court for further proceedings consistent with this opinion.

## I. <u>BACKGROUND</u>

We write primarily for the benefit of the parties and recount only the essential facts.

Beyer worked as a police officer for the Duncannon Borough. On November 9, 2005, two officers were involved in a shootout with a man who was using a 7mm Remington Magnum rifle. The two officers were armed with standard 12 gauge shotguns. One of the officers was struck during the encounter and died. This tragedy initiated a public discussion about whether the officers had sufficient weaponry to combat

---

[1] Although the District Court issued multiple Orders and Memoranda, for purposes of our review, it is only the District Court's June 25, 2010 Order and Memorandum that we currently consider since Beyer's Second Amended Complaint is before this Court.

criminals. Beyer alleges that a 12 gauge shotgun cannot match the performance of a 7mm Remington Magnum rifle. As a result of the shooting, Beyer recommended the purchase of AR-15s, weapons which allegedly shoot at a high velocity. Mayor Kraig Nace ("Nace") subsequently authorized the purchase of two AR-15 rifles to be carried in the patrol cars for the Duncannon Borough. In February 2006, the Duncannon Borough Council ("Council") approved Nace's decision to purchase the two AR-15s. Beyer alleges that after the acquisition of the AR-15s, the Council criticized the purchase and contended that the rifles were purchased without authorization.

In January 2008, Beyer used the pseudonym "big bear"[2] and posted comments on the internet in opposition to the views of the Council members, who had been criticizing the purchase of the AR-15s. In particular, Beyer opposed the views of Council members Gerald Bell ("Bell");[3] Hammaker, President of the Council; and Brunner, Chairman of the Council. A debate ensued over the AR-15s and that discussion generated interest by the press. In the winter of 2008, Beyer appeared on Fox 43 "News at Ten" to "report[] accurately many facts about the weapons." (App. at 60.) On March 6, 2008, an "ad hoc committee," chaired by Michael Fedor ("Fedor"), investigated the AR-15s. The committee ultimately recommended to keep one of the AR-15s and sell the other. The Council agreed with the committee's recommendation. Beyer alleges that during Fedor's

---

[2] Beyer alleges that he posted on the internet under the pseudonym "big bear" and the Council inquired about postings by "Big Bear." We refer to "big bear" and "Big Bear" interchangeably as Beyer did in the Second Amended Complaint.

[3] Defendant Gerald Bell was dismissed from the case by Order granting Motion to Dismiss on December 15, 2009.

investigation, Fedor "openly attacked" Beyer about the information Beyer had presented to the public.

On June 3, 2008, Beyer posted "information critical of [the Council] on the internet." (Id. at 61.) Beyer did not use his own name or identify any Council members by name. On June 17, 2008, Bell sent Beyer a letter indicating the Council's awareness of the internet postings by "Big Bear," informing Beyer that some of the postings were inappropriate, and asking Beyer if he was "Big Bear." Beyer alleges that he was given twenty-four hours to respond to the letter. He chose not to answer the Council's question as to whether he was "Big Bear," without the advice of counsel. On June 24, 2008, upon the advice of counsel, Beyer responded that he had used the pseudonym "Big Bear" to post information on the internet, but did not know if the "Big Bear" or "big bear" postings that the Council was referring to were his. Beyer did admit to criticizing Council.

On July 1, 2008, Bell wrote Beyer and requested that Beyer appear on July 8, 2008 at 8:00 a.m. before the committee for a "fact-finding interview." (Id. at 62.) According to Beyer, he discussed scheduling the interview with Mayor Nace and Derr and informed Bell that he would agree to meet at a time that did not interfere with his full-time employment. On July 16, 2008, Bell allegedly wrote Beyer a letter stating that "during a regular session of the Duncannon Borough Council[,] Council voted to terminate your (Eric Beyer's) employment with the Duncannon Borough Police Department effective immediately." (Id. at 63.) Hammaker signed the letter as President of Council.

4

On July 17, 2009, Beyer filed a complaint in federal court. On August 27, 2010 and September 11, 2009, Appellees filed Motions to Dismiss the Complaint. On September 25, 2009, Beyer filed an Amended Complaint. On December 15, 2009, the District Court granted in part, and denied in part, Appellees' Motions to Dismiss the Amended Complaint. On December 29, 2009, Beyer filed a Motion for Reconsideration. On February 5, 2010, the District Court denied Beyer's Motion for Reconsideration.

On February 19, 2010, Beyer filed a Second Amended Complaint asserting a First Amendment retaliation claim, a First Amendment right to petition claim, and a wrongful discharge claim under Pennsylvania law. On June 25, 2010, the District Court granted Appellees' Motions to Dismiss the Second Amended Complaint. The District Court held that despite the existence of protected speech and retaliation, Beyer did not plead facts to support an inference that the protected speech was a substantial factor in the retaliation. The District Court also dismissed Beyer's First Amendment petitioning claim on the ground that Beyer filed no petition prior to the alleged retaliation.[4] Finally, the District Court did not retain supplemental jurisdiction over Beyer's wrongful discharge claim under Pennsylvania law.[5]

---

[4] Beyer does not raise any arguments regarding the District Court's dismissal of his First Amendment petitioning claim in his opening brief on appeal and has accordingly waived it. Graden v. Conexant Sys. Inc., 496 F.3d 291, 296 n.6 (3d Cir. 2007) ("Absent compelling circumstances . . . failing to raise an argument in one's opening brief waives it."). Nonetheless, we agree with the District Court's conclusion that Beyer did not petition the government prior to the Appellees' retaliation.

[5] Appellant does not seek review of the District Court's determination that pendant state claims should not be addressed.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction over Beyer's claims, pursuant to 28 U.S.C. § 1331. We have jurisdiction, pursuant to 28 U.S.C. § 1291, to review the District Court's final order.

We review a district court's order granting a motion to dismiss de novo. Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007). A Rule 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, --U.S.--, 129 S. Ct. 1937, 1949 (2009). A plaintiff is required, by Federal Rule of Civil Procedure 8(a)(2), to provide the "grounds of his entitle[ment] to relief [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation and internal quotation marks omitted).

## III. ANALYSIS

To state a First Amendment retaliation claim, a public employee plaintiff must allege that the plaintiff's "activity is protected by the First Amendment, and that the protected activity was a substantial factor in the alleged retaliatory action." Gorum v. Sessoms, 561 F.3d 179, 184 (3d Cir. 2009) (citation omitted) (explaining that after these two elements are established, the burden shifts to the defendants to demonstrate that the same action would occur if the speech had not occurred).

A. Protected Activity

6

To determine whether a public employee's speech is protected by the First Amendment, we must make two inquiries:

> The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.

Garcetti v. Ceballos, 547 U.S. 410, 418 (2006) (citation omitted).

Our inquiry begins with determining whether we can "read the complaint to allege that [Beyer] was speaking as a 'citizen.'" Hill v. Borough of Kutztown, 455 F.3d 225, 242 (3d Cir. 2006) ("[O]n a 12(b)(6) motion, the court examines 'whether, *under any reasonable reading of the complaint*, the plaintiff may be entitled to relief." (citation omitted) (emphasis added)). We believe that Beyer has alleged facts that he was speaking as a citizen, rather than as, on the other hand, a public official.[6] Public employees do not speak "as citizens" when they make statements "pursuant to their official duties." Garcetti, 547 U.S. at 421. In Garcetti, the Supreme Court held that the public employee had written a memo "pursuant to [his] official duties," and thus as a public employee, because "that is part of what he, as a calendar deputy, was employed to do." Id. at 421. The Supreme Court contrasted Garcetti to Pickering v. Bd. of Educ., 391

---

[6] The District Court held that Beyer did not establish a causal connection and stated that it did not need to reach the issue of whether Beyer was acting as a citizen or public employee.

7

U.S. 563 (1968), where the speaker's "letter to the newspaper had no official significance and bore similarities to letters submitted by numerous citizens every day." Garcetti, 547 U.S. at 422.

We conclude that Beyer sufficiently alleged facts that he was speaking as a citizen, rather than as a public employee. See id. at 421. Beyer was a police officer who recommended the purchase of the AR-15s after "hours of research, on his own time, to determine what would be the best weapon system and caliber for use in Duncannon Borough, considering the price of the weapons, ease of use and training, cost of ammunition, and maintenance." (App. at 57.) Beyer alleges that his research and discussion about the weapons were "on his time," rather than pursuant to his duties as a police officer. Also, Beyer's comments, at issue, were posted pseudonymously on an internet site and not pursuant to his duties as a police officer.

Next, we must determine whether Beyer pled sufficient facts that his discussion about the AR-15s was a matter of public concern. An employee's speech is a matter of public concern if "it can be fairly considered as relating to any matter of political, social, or other concern to the community." Holder v. City of Allentown, 987 F.2d 188, 195 (3d Cir. 1993) (citation and internal quotation marks omitted). Determining whether speech is a matter of public concern "requires us to examine the content, form, and context of that speech." Snyder v. Phelps, --U.S.--, 131 S. Ct. 1207, 1216-17 (2011) (internal quotation marks and citation omitted) (explaining that an individual's credit report did not address public concern, while matters regarding the political and moral conduct of the

8

United States and its citizens were of public concern even where the messages "fall short of refined social or political commentary"). Speech about police misconduct, for example, is a matter of public concern. Vose v. Kliment, 506 F.3d 565, 569 (7th Cir. 2007); Markos v. City of Atlanta, Texas, 364 F.3d 567, 570 (5th Cir. 2004).

Focusing on the content, form, and context of Beyer's speech, we hold that Beyer sufficiently pled that his speech was a matter of public concern. He alleges that the content of his speech was to "report[] accurately many facts about the weapons," (App. at 60), which is related to a matter of political, social, or other concern to the community. See Holder, 987 F.2d at 195. Discussion about the AR-15s relates to issues about the safety of the Duncannon Borough's Police Force, which implicates public safety and extends beyond issues specific to Beyer. Beyer pleads sufficient facts that the AR-15s were of public concern. In particular, Beyer alleges that the discussion regarding AR-15s was an issue of "officer and citizen safety," that the information about the weapons was "highly technical" and unavailable to the average citizen, and a "press discussion of the issue began to grow." (App. at 57, 59); see Borden v. Sch. Dist. of the Twp. of E. Brunswick, 523 F.3d 153, 170 (3d Cir. 2008) (noting that discussion regarding the government's waste of taxpayers' money is a matter of public concern) (citation omitted)); Cf. Gorum, 561 F.3d at 187 (holding that an individual student's future as a professional athlete did not pertain to a public concern).

Beyer's personal interest in the discussion of AR-15s because of his recommendation to purchase the weapons does not lead to the conclusion that the speech

9

is of purely personal interest.  See Markos, 364 F.3d at 571 ("While speech on behalf of a coworker would be private in many situations, it is infused with an element of public interest here because it assured the public of the trustworthiness of some of its police officers.").

Communicating the message in a public manner through the internet and news further weighs in favor of the conclusion that the speech here is of public concern.  See id. (noting that public communication, rather than internal communication, weighs in favor that the speech is a public concern); see also Reno v. ACLU, 521 U.S. 844, 870 (1997) (conduct protected by the First Amendment extends to communications made through the medium of the internet).

We hold that Beyer alleges facts that his speech was protected sufficient to overcome a motion to dismiss.

B.  Protected Activity Was A Substantial Factor In The Retaliation

To establish that the protected conduct was a substantial factor in the retaliation, a plaintiff usually must prove either

> (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.  In the absence of that proof, the plaintiff must show that from the "evidence gleaned from the record as a whole" the trier of fact should infer causation.

Lauren W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) (citations omitted); see also Marra v. Philadelphia Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007) (noting that "[i]n

10

certain narrow circumstances, an 'unusually suggestive' proximity in time between the protected activity and the adverse action may be sufficient, on its own, to establish the requisite causal connection" (citation omitted)). The decision-makers must be aware of the protected conduct for it to be a substantial or motivating factor in a decision. Gorum, 561 F.3d at 188.

Beyer alleges that he posted on the internet in January 2008, appeared on Fox in the winter of 2008, and posted on the internet again on June 3, 2008. Bell wrote Beyer a letter on June 17, 2008 questioning him about the internet posts and again on July 1, 2008 demanding a meeting with Beyer. On July 16, 2008, Bell wrote Beyer a letter informing him of the decision to terminate his employment. In light of the temporal proximity among these events, we cannot agree with the District Court that Beyer failed to allege facts regarding the causal connection and the retaliation. See Lauren W., 480 F.3d at 267; Marra, 497 F.3d at 302.[7] The temporal proximity clearly makes it plausible that the protected activity was a substantial factor.

## IV. CONCLUSION

We will reverse, in part, and affirm, in part, the District Court's June 25, 2010 Order. Based on this Court's ruling, we will remand the First Amendment retaliation

---

[7] Throughout Appellant's brief, Appellant's Attorney, Don Bailey, asserts that the trial courts and the appellate court in this Circuit have not permitted lawsuits that he has been involved in to proceed unencumbered. This is not an issue that this Court needs to address at present. There is no basis to believe or conclude regarding the instant litigation that Appellant or Appellant's attorney is not being given the opportunity to be heard.

claim to the District Court for further proceedings consistent with this opinion.